**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 26-CV-24861-JB**

MOBII SYSTEMS GROUP LIMITED,

     Plaintiff,

v.

LIV GOLF INCORPORATED,

     Defendant.

---

**ANSWER TO COMPLAINT**

Defendant LIV Golf Incorporated ("LIV Golf"), by and through its undersigned counsel, hereby answers the Complaint [ECF No. 1], filed by Plaintiff Mobii Systems Group Limited ("Mobii").

LIV Golf does not, by noting or admitting that the Complaint purports to characterize or quote particular documents, admit the truth of any assertion in any referenced document. Moreover, headings in the Complaint are not substantive allegations to which an answer is required. To the extent headings are substantive allegations to which an answer is required, LIV Golf denies those allegations.

In answer to the Complaint, LIV Golf states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.    Plaintiff, Mobii Systems Group Limited ("Mobii"), is a foreign company incorporated in and has its principal place of business in Ontario, Canada. Mobii is a Canadian citizen for jurisdictional purposes.

**ANSWER:** To the extent the allegations in Paragraph 1 assert legal conclusions, no response is required. To the extent the allegations in Paragraph 1 contain factual allegations

1

requiring a response, LIV Golf lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and, on that basis, denies them.

2. Defendant, LIV Golf, Incorporated ("LIV Golf" or "LIV US"), is incorporated in Delaware, with its principal place of business located at 600 Brickell Avenue, Suite 1755, Miami, FL 33131. LIV Golf, Incorporated is a Delaware and Florida citizen for jurisdictional purposes.

**ANSWER:** LIV Golf admits it is a Delaware corporation. To the extent the allegations in Paragraph 2 assert legal conclusions, no response is required. Except as expressly admitted, LIV Golf denies the allegations in Paragraph 2.

3. Because Mobii seeks over $1,000,000 in damages, this action exceeds the $75,000 jurisdictional threshold.

**ANSWER:** The allegations in Paragraph 3 state legal conclusions to which no response is required.

4. This Court has diversity subject matter jurisdiction because the parties' citizenship is completely diverse and the amount in controversy exceeds the jurisdictional threshold.

**ANSWER:** The allegations in Paragraph 4 state legal conclusions to which no response is required.

5. Venue is proper in this Court because the conduct giving rise to this breach of contract action occurred within the Southern District of Florida and Defendant's principal place of business is in this district.

**ANSWER:** The allegations in Paragraph 5 state legal conclusions to which no response is required.

 a. Defendant LIV Golf Incorporated is a Delaware corporation with its principal place of business at 600 Brickell Avenue, Suite 1755, Miami, Florida 33131, within this District, as stated in LIV Golf Incorporated's own 2026 Foreign Profit Corporation Annual Report filed with the Florida Secretary of State on May 1, 2026, which lists each of its directors at that address. LIV Golf Incorporated is the counterparty to the Agreement in respect of the obligations, invoices, and Events at issue in this action.

**ANSWER:** LIV Golf admits it is a Delaware corporation. To the extent the allegations in Paragraph 5(a) assert legal conclusions, no response is required. To the extent the allegations in

2

Paragraph 5(a) purport to characterize LIV Golf's 2026 Foreign Profit Corporation Annual Report filed with the Florida Secretary of State on May 1, 2026, LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized.   To the extent the allegations in Paragraph 5(a) contain factual allegations requiring a response, except as expressly admitted, LIV Golf denies the allegations in Paragraph 5(a).

    b. All invoices issued by Mobii under the Agreement, in both 2025 and 2026, including each of the invoices that form the basis of this action, were issued to and payable by LIV Golf Incorporated. No invoice was ever issued to LIV Golf Ltd.

**ANSWER:**  The allegations in Paragraph 5(b) purport to characterize invoices issued by Mobii under the Agreement.  LIV Golf respectfully refers the Court to those documents for their true and complete contents and denies any allegations that have been inaccurately characterized. To the extent the allegations in Paragraph 5(b) assert legal conclusions, no response is required. To the extent the allegations in Paragraph 5(b) contain factual allegations requiring a response, LIV Golf denies the allegations in Paragraph 5(b).

    c. LIV Golf Incorporated maintains an operational office at 222 Lakeview Avenue, Suite 1400, West Palm Beach, Florida, within this District, which LIV Golf Incorporated has identified as its address in its own public filings, including filings made with United States federal authorities.

**ANSWER:**  To the extent the allegations in Paragraph 5(c) assert legal conclusions, no response is required.  To the extent the allegations in Paragraph 5(c) purport to characterize LIV Golf's public filings, including filings made with United States federal authorities, LIV Golf respectfully refers the Court to those documents for their true and complete contents and denies any allegations that have been inaccurately characterized.  To the extent the allegations in Paragraph 5(c) contain factual allegations requiring a response, except as expressly admitted, LIV Golf denies the allegations in Paragraph 5(c).

    d.  The Agreement expressly provides that the courts of England are a "non-exclusive jurisdiction," and the parties therefore agreed that proceedings arising out of the Agreement could be brought in courts other than the English courts.

**ANSWER:** The allegations in Paragraph 5(d) purport to characterize the Agreement. LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized. To the extent the allegations in Paragraph 5(d) assert legal conclusions, no response is required. To the extent the allegations in Paragraph 5(d) contain factual allegations requiring a response, LIV Golf denies the allegations in Paragraph 5(d).

    e.  No party to this action is an English company: Mobii is a company incorporated in Canada with its principal place of business in Ontario, and LIV Golf Incorporated is a Delaware corporation. England is not the home forum of either party to this action.

(*See* LIV Golf Incorporated's Annual Report attached and incorporated as Exhibit 1.)

**ANSWER:** LIV Golf admits it is a Delaware corporation. LIV Golf lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5(e) regarding Mobii's incorporation and principal place of business and, on that basis, denies them. To the extent the allegations in Paragraph 5(e) assert legal conclusions, no response is required. To the extent the allegations in Paragraph 5(e) contain factual allegations requiring a response, except as expressly admitted, LIV Golf denies the allegations in Paragraph 5(e).

**GENERAL ALLEGATIONS**

6.    LIV Golf is a professional golf league that holds golf competitions around the world each year. LIV Golf was founded in 2022 to be a competitive rival to the PGA Tour. Its primary funding came from Saudi Arabia's Public Investment Fund. That funding allowed LIV Golf to attract premier talent using significant signing bonuses and competition prizes.

**ANSWER:** LIV Golf admits the allegations in Paragraph 6.

7.    LIV Golf originally broadcast its events online. In 2023, it agreed to broadcast its events on the CW Network. Then, in 2025, LIV Golf agreed to broadcast its events on Fox Sports, where it continues to broadcast its events today.

4

**ANSWER:**  LIV Golf admits the allegations in Paragraph 7.

8.      Mobii provides comprehensive technology services to enhance live sports broadcasts. The company was founded in 2008 and has served numerous sports broadcast partners all over the globe.

**ANSWER:**  LIV Golf lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 and, on that basis, denies them.

9.      On January 24, 2025, Mobii and LIV Golf entered into the Supply of Goods and Services Agreement (the "Agreement"). (*See* Agreement attached and incorporated as Exhibit 2.)

**ANSWER:**  The allegations in Paragraph 9 purport to characterize the Agreement.  LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized.

10.      The Agreement has a two-year term, beginning on January 1, 2025, and ending on December 31, 2026. (*Id.* at 1.)

**ANSWER:**  To the extent the allegations in Paragraph 10 assert legal conclusions, no response is required.  To the extent the allegations in Paragraph 10 purport to characterize the Agreement, LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized.  To the extent the allegations in Paragraph 10 contain factual allegations requiring a response, LIV Golf denies the allegations in Paragraph 10.

11.      The Agreement requires Mobii to provide LIV Golf integrated broadcast technology, streaming services, platform licenses, and related support services at all LIV Golf events in 2025 and 2026. (*See id.* at 16-33.)

**ANSWER:**  To the extent the allegations in Paragraph 11 assert legal conclusions, no response is required.  To the extent the allegations in Paragraph 11 purport to characterize the Agreement, LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized.  To the extent the

allegations in Paragraph 11 contain factual allegations requiring a response, LIV Golf denies the allegations in Paragraph 11.

12.     In return, LIV Golf was required to pay services fees, which include an annual service fee and usage fees per event for Mobii's event-based services. (*See id.* § 14.1.)

**ANSWER:**  To the extent the allegations in Paragraph 12 assert legal conclusions, no response is required.  To the extent the allegations in Paragraph 12 purport to characterize the Agreement, LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized.  To the extent the allegations in Paragraph 12 contain factual allegations requiring a response, LIV Golf denies the allegations in Paragraph 12.

13.     Notably, section 14.7 in the Agreement states in pertinent part:

Payment of invoices in relation to which there is no bona fide dispute shall be made in full by the due date set out in the Services Payment Schedule as appropriate, subject to the LIV Golf Parties having received a valid invoice not less than thirty (30) days prior to the applicable payment date and where an invoice is not received by such date the time for payment shall be extended to thirty days after the receipt of the invoice.

(*See id.* § 14.7.)

**ANSWER:**  The allegations in Paragraph 13 purport to characterize or quote from the Agreement.  LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized.

14.     If payment is not made on a valid invoice, the Agreement provides Mobii the right to collect interest, at the rate of two percent (2%) per annum above the Bank of England's base rate from time to time, until payment is made. (*Id.* at § 14.9.)

**ANSWER:**  To the extent the allegations in Paragraph 14 assert legal conclusions, no response is required.  To the extent the allegations in Paragraph 14 purport to characterize the Agreement, LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized.  To the extent the

6

allegations in Paragraph 14 contain factual allegations requiring a response, LIV Golf denies the allegations in Paragraph 14.

15.     The Agreement is governed by English law. And while the parties submitted to English courts for resolving disputes, the Agreement explicitly acknowledges that English courts are a "non-exclusive jurisdiction." (*Id.* § 28.19.)

**ANSWER:**  To the extent the allegations in Paragraph 15 assert legal conclusions, no response is required.  To the extent the allegations in Paragraph 15 purport to characterize the Agreement, LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized.  To the extent the allegations in Paragraph 15 contain factual allegations requiring a response, LIV Golf denies the allegations in Paragraph 15.

16.     The Agreement is a single written instrument executed by three parties: LIV Golf Incorporated (referred to in the Agreement as "LIV US"), LIV Golf Ltd, an English company ("LIV UK"), and Mobii. Each of LIV US, LIV UK, and Mobii is named on the face of the Agreement and defined as a "Party" (collectively, the "Parties"), and LIV US and LIV UK together are defined as the "LIV Golf Parties." The Agreement is executed once by each Party, is referred to throughout in the singular ("this Agreement"), and creates a single, integrated set of obligations among all three Parties.

**ANSWER:**  To the extent the allegations in Paragraph 16 assert legal conclusions, no response is required.  To the extent the allegations in Paragraph 16 purport to characterize the Agreement, LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized.  To the extent the allegations in Paragraph 16 contain factual allegations requiring a response, LIV Golf denies the allegations in Paragraph 16.

17.     Clause 4.7 of the Agreement identifies the commercial purpose for which each LIV Golf Party entered into the Agreement: LIV US in respect of Services to be provided in connection with Events in the United States, and LIV UK in respect of Services to be provided in connection with Events outside the United States. Clause 4.7 allocates the commercial purpose of the Services between the LIV Golf Parties; it does not fragment the Agreement into separate bilateral contracts. Numerous operative provisions of the Agreement, including the exclusive licenses granted under

clause 4.8 and the payment obligation established by clause 14.1, are expressed to operate for the benefit of, or to be owed by, the LIV Golf Parties collectively.

**ANSWER:** To the extent the allegations in Paragraph 17 assert legal conclusions, no response is required. To the extent the allegations in Paragraph 17 purport to characterize the Agreement, LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized. To the extent the allegations in Paragraph 17 contain factual allegations requiring a response, LIV Golf denies the allegations in Paragraph 17.

18.    Clause 14.1 of the Agreement provides: "In consideration of the provision of the Services, the LIV Golf Parties shall pay to the Supplier the Services Fees in accordance with the Services Payment Schedule." The obligation is stated in the plural ("the LIV Golf Parties shall pay") and is not apportioned as between LIV US and LIV UK on the face of clause 14.1. Under the English law that governs the Agreement, a payment obligation expressed to be owed by two named parties collectively, without allocation between them, in a commercial contract between sophisticated parties, gives rise to a joint and several liability on each of those parties for the whole amount payable. That construction accords with the commercial purpose of clause 14.1, which is to secure payment of the Services Fees to Mobii by the LIV Golf group, and which would be defeated by a construction requiring Mobii to pursue a foreign affiliate in order to recover sums unpaid under the Agreement.

**ANSWER:** To the extent the allegations in Paragraph 18 assert legal conclusions, no response is required. To the extent the allegations in Paragraph 18 purport to characterize the Agreement, LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized. To the extent the allegations in Paragraph 18 contain factual allegations requiring a response, LIV Golf denies the allegations in Paragraph 18.

19.    The Agreement contains no provision excluding, limiting, or apportioning the joint and several liability of LIV US and LIV UK under clause 14.1. Where the Parties intended to exclude or limit rights or liabilities under the Agreement, they did so expressly: clause 28.14, for example, expressly excludes the operation of the Contracts (Rights of Third Parties) Act 1999. No comparable carve-out qualifies the payment obligation in clause 14.1.

**ANSWER:**  To the extent the allegations in Paragraph 19 assert legal conclusions, no response is required.  To the extent the allegations in Paragraph 19 purport to characterize the Agreement, LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized.  To the extent the allegations in Paragraph 19 contain factual allegations requiring a response, LIV Golf denies the allegations in Paragraph 19.

20.     The invoicing arrangements in clauses 14.3 and 14.4 do not alter or diminish LIV US's joint and several liability under clause 14.1. Clause 14.3 confers on the LIV Golf Parties "absolute discretion" as to how invoices are addressed as between LIV US, LIV UK, and their affiliates, a matter of administrative allocation directed at how Mobii is to issue invoices rather than at who is substantively liable to pay them. Clause 14.4 likewise directs Mobii, as Supplier, to apportion the Services Fees for invoicing purposes between LIV US (for US Events) and LIV UK (for non-US Events), to issue separate invoices to each, and to obtain the LIV Golf Parties' agreement to the proposed apportionment. Clause 14.4's statement that "the Services Fees shall only be payable once" is a safeguard against double recovery, a concern that itself presupposes that each of the LIV Golf Parties could be liable to Mobii for the whole, and its requirement for separate invoices governs the mechanics of billing. Neither provision releases LIV US from, or otherwise qualifies, the substantive payment obligation established by clause 14.1.

**ANSWER:**  To the extent the allegations in Paragraph 20 assert legal conclusions, no response is required.  To the extent the allegations in Paragraph 20 purport to characterize the Agreement, LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized.  To the extent the allegations in Paragraph 20 contain factual allegations requiring a response, LIV Golf denies the allegations in Paragraph 20.

21.     Accordingly, LIV US is jointly and severally liable to Mobii under clause 14.1 of the Agreement for all Services Fees payable to Mobii under the Agreement, including in respect of Events held outside the United States, and Mobii is entitled to recover the full amount of any unpaid Services Fees, and consequential damages arising from any breach of clause 14.1, from LIV US alone.

**ANSWER:**  The allegations in Paragraph 21 state legal conclusions to which no response is required.

9

22.     The construction of clause 14.1 set out above is confirmed by the manner in which the LIV Golf Parties in fact operated the payment obligation under the Agreement. First, LIV Golf instructed Mobii on multiple occasions to submit all invoices issued under the Agreement, whether addressed to LIV US or to LIV UK, to a single common email address, accounts@livgolf.com, operated by the LIV Golf group. Mobii complied with those instructions, and each of the invoices identified in this Complaint was submitted to that address in accordance with LIV Golf's direction. The LIV Golf Parties did not maintain and did not instruct Mobii to use separate invoice submission channels for LIV US and LIV UK. Second, the individuals within the LIV Golf organization who instructed, approved, discussed, or otherwise handled payment of Mobii's invoices under the Agreement were the same personnel irrespective of whether the invoice in question was addressed to LIV US or to LIV UK. A single set of personnel discharged those functions for the LIV Golf group as a whole. Third, every invoice issued by Mobii under the Agreement, in both 2025 and 2026, was issued to LIV Golf Incorporated; no invoice was ever issued to LIV Golf Ltd, and the 2025 invoices, including the invoice for the 2025 annual license fee, were paid in full without any apportionment process under clause 14.4 ever being invoked or operated by any LIV Golf Party. That course of dealing is inconsistent with the geographic segregation of substantive payment liability that clause 4.7, read in isolation, might otherwise be said to suggest, and confirms the unified operation and joint and several nature of the payment obligation established by clause 14.1.

ANSWER:  To the extent the allegations in Paragraph 22 assert legal conclusions, no response is required.  To the extent the allegations in Paragraph 22 purport to characterize communications between LIV Golf and Mobii and invoices issued by Mobii under the Agreement, LIV Golf respectfully refers the Court to those documents for their true and complete contents and denies any allegations that have been inaccurately characterized.  To the extent the allegations in Paragraph 22 contain factual allegations requiring a response, LIV Golf denies the allegations in Paragraph 22.

23.     In 2025, LIV Golf paid Mobii's invoices for the first year under the Agreement. Every invoice issued by Mobii in 2025, including the invoice for the 2025 annual license fee for the same platform licenses that are the subject of Invoice 0091, was issued to LIV Golf Incorporated, was submitted through the same channel, and was paid in full. At no time in 2025 did any LIV Golf Party invoke, request, or operate any apportionment process in respect of Mobii's invoices. In early 2026, however, LIV Golf began falling behind on timely paying Mobii's invoices. Notably, LIV Golf has not disputed any one of Mobii's invoices to date.

ANSWER:  LIV Golf admits the allegations in the first and fifth sentences of Paragraph 23. LIV Golf further admits that every invoice issued by Mobii to LIV Golf in 2025 was paid in full. To the extent the allegations in Paragraph 23 assert legal conclusions, no response is required.  To

10

the extent the allegations in the second sentence of Paragraph 23 purport to characterize invoices issued by Mobii under the Agreement, LIV Golf respectfully refers the Court to those documents for their true and complete contents and denies any allegations that have been inaccurately characterized.  To the extent the allegations in Paragraph 23 contain factual allegations requiring a response, except as expressly admitted, LIV Golf denies the allegations in Paragraph 23.

24.     At no time prior to the filing of this Complaint has LIV Golf asserted any bona fide dispute, counterclaim, right of set-off, service-level failure, warranty concern, or any other basis under the Agreement or otherwise for withholding, reducing, or delaying payment of any of the invoices identified in this Complaint. To the contrary, personnel of LIV Golf on multiple occasions acknowledged the outstanding invoices and informed Mobii, including in written communications to Mobii's Chief Executive Officer and other Mobii personnel, that the invoices had been approved and were in process for payment. Notwithstanding these repeated acknowledgments and approvals, LIV Golf failed to remit payment.

**ANSWER:**   LIV Golf admits that certain invoices identified in the Complaint are outstanding.  To the extent the allegations in Paragraph 24 assert legal conclusions, no response is required.  To the extent the allegations in Paragraph 24 purport to characterize communications between LIV Golf and Mobii, LIV Golf respectfully refers the Court to those documents for their true and complete contents and denies any allegations that have been inaccurately characterized. To the extent the allegations in Paragraph 24 contain factual allegations requiring a response, except as expressly admitted, LIV Golf denies the allegations in Paragraph 24.

25.     On February 28, 2026, Mobii issued to LIV Golf an invoice for the 2026 Annual License Fee in the amount of $820,600.00. (Mobii Invoice 0091 attached and incorporated as Exhibit 3.) The Annual License Fee was invoiced in respect of platform licenses and integrated technology that were live, operational, and deployed at LIV Golf events from the beginning of the 2026 season, and that continued to be so deployed through the date of LIV Golf's repudiation of the Agreement. The Annual License Fee was fully invoiced on February 28, 2026, and became due and payable on March 9, 2026, well prior to any repudiation of the Agreement by LIV Golf, and LIV Golf's obligation to pay the Annual License Fee accrued in full on that date.

**ANSWER:**  To the extent the allegations in Paragraph 25 assert legal conclusions, no response is required.  To the extent the allegations in Paragraph 25 purport to characterize an invoice issued by Mobii to LIV Golf, LIV Golf respectfully refers the Court to that document for

11

its true and complete contents and denies any allegations that have been inaccurately characterized. To the extent the allegations in Paragraph 25 contain factual allegations requiring a response, LIV Golf denies the allegations in Paragraph 25.

26.     On March 1, 2026, Mobii served LIV Golf an invoice for event-based services for $7,419.03. (Mobii Invoice 0100 attached and incorporated as Exhibit 4.)

**ANSWER:**  Paragraph 26 purports to characterize an invoice issued by Mobii to LIV Golf. LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized.

27.     On April 30, 2026, Mobii served LIV Golf an invoice for event-based services for $7,412.34. (Mobii Invoice 0105 attached and incorporated as Exhibit 5.)

**ANSWER:**  Paragraph 27 purports to characterize an invoice issued by Mobii to LIV Golf. LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized.

28.     On May 5, 2026, Mobii served LIV Golf an invoice for event-based services for $51,071.43. (Mobii Invoice 0107 attached and incorporated as Exhibit 6.)

**ANSWER:**  Paragraph 28 purports to characterize an invoice issued by Mobii to LIV Golf. LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized.

29.     On May 11, 2026, Mobii served LIV Golf an invoice for event-based services for $25,049.81. (Mobii Invoice 0111 attached and incorporated as Exhibit 7.)

**ANSWER:**  Paragraph 29 purports to characterize an invoice issued by Mobii to LIV Golf. LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized.

30.     On June 11, 2026, Mobii served LIV Golf an invoice for event-based services for $6,671.00. (Mobii Invoice 0120 attached and incorporated as Exhibit 8.)

12

**ANSWER:** Paragraph 30 purports to characterize an invoice issued by Mobii to LIV Golf. LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized.

31.     Also on June 11, 2026, Mobii served LIV Golf an invoice for event-based travel to LIV Golf's Virginia competition for $6,879.21. (Mobii Invoice 0121attached and incorporated as Exhibit 9.)

**ANSWER:** Paragraph 31 purports to characterize an invoice issued by Mobii to LIV Golf. LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized.

32.     LIV Golf has failed to pay each invoice attached as Exhibits 3 through 9. As a result, each invoice is past due, and Mobii is owed interest on those amounts pursuant to section 14.9 of the Agreement.

**ANSWER:** LIV Golf admits that the invoices identified in Paragraphs 25 through 31 remain outstanding. To the extent the allegations in Paragraph 32 assert legal conclusions, no response is required. To the extent the allegations in Paragraph 32 contain factual allegations requiring a response, except as expressly admitted, LIV Golf denies the allegations in Paragraph 32.

33.     Despite LIV Golf's failure to pay these invoices, Mobii continued to perform under the Agreement. Indeed, Mobii continued to grant LIV Golf licenses to use its services and provided event-based services for seven (7) of LIV Golf's events in 2026.

**ANSWER:** The allegations in Paragraph 33 state legal conclusions to which no response is required. To the extent the allegations in Paragraph 33 contain factual allegations requiring a response, LIV Golf denies the allegations in Paragraph 33.

34.     Mobii has taken significant efforts to collect the amounts due pursuant to these invoices to avoid litigation.

**ANSWER:** LIV Golf lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 and, on that basis, denies them.

35.     Specifically, on May 8, 2026, Mobii's Canadian-based counsel served LIV Golf a Notice of Demand for Payment and Notice of Event of Default, demanding payment for the overdue invoices as of that date. The notices gave LIV Golf until May 15, 2026, to pay the overdue invoices. (Notice of Demand for Payment and Notice of Event of Default dated May 8, 2026, attached and incorporated as Composite Exhibit 10.)

**ANSWER:**  Paragraph 35 purports to characterize a May 8, 2026 Notice of Demand for Payment and Notice of Event of Default issued by Mobii to LIV Golf.  LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized.

36.     On May 25, 2026, Nick Connor, LIV Golf's Senior Vice President of Technology, sent Mobii a repudiatory breach notice by email. Throughout the term of the Agreement, Mobii's communications with the LIV Golf organization concerning the Services and Mobii's invoices were conducted through a succession of senior LIV Golf personnel, each of whom communicated with Mobii on behalf of the LIV Golf organization as a whole, without distinguishing between the LIV Golf Parties and without confining their communications to US Events or non-US Events: Matt Saunders, Senior Vice President, Direct-to-Consumer, until his departure from LIV Golf in the first quarter of 2026; Denise Taylor, Chief Product and Technology Officer, until her departure from LIV Golf in April 2026; and thereafter Andrew Lim of LIV Golf's product team, who among other things informed Mobii that its outstanding invoices had been approved and were in process for payment. Mr. Connor was copied on communications between Mobii and Ms. Taylor and Mr. Lim and on Mobii's communications to LIV Golf's accounts payable function, and from late April 2026 Mr. Connor was Mobii's senior point of contact within the LIV Golf organization in relation to the Agreement. The succession of LIV Golf personnel handling Mobii's account did not alter the unified manner in which the LIV Golf organization communicated with Mobii, which at no time distinguished between the LIV Golf Parties in respect of the Services or Mobii's invoices.

**ANSWER:**  To the extent the allegations in Paragraph 36 assert legal conclusions, no response is required.  To the extent the allegations in Paragraph 36 purport to characterize communications between Mobii and LIV Golf, LIV Golf respectfully refers the Court to those documents for their true and complete contents and denies any allegations that have been inaccurately characterized.  To the extent the allegations in Paragraph 36 contain factual allegations requiring a response, LIV Golf denies the allegations in Paragraph 36.

37.     In his May 25, 2026, email, Mr. Connor stated: "[W]e are writing to notify you that we will not be moving forward with Mobii in Korea or at subsequent events." Mr. Connor's use of the collective "we," his reference to "Korea or at subsequent events" without geographic qualification as between US and non-US Events, and his stated intention that Mobii would not be

14

engaged for any further Events under the Agreement, manifested a clear and unequivocal intention on behalf of the LIV Golf Parties collectively no longer to perform the Agreement. Mr. Connor did not, in his May 25, 2026, email or otherwise, confine his repudiation to the obligations of LIV UK, and did not distinguish between the LIV Golf Parties. Mr. Connor also stated in the same email: "Please know that this decision is not reflective of the quality of work or services provided, and we are truly grateful for your partnership over the last several years." (Email from Mr. Connor dated May 25, 2026, attached and incorporated as Exhibit 11.)

**ANSWER:** To the extent the allegations in Paragraph 37 assert legal conclusions, no response is required. To the extent the allegations in Paragraph 37 purport to characterize a May 25, 2026 email by Nick Connor, LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized. To the extent the allegations in Paragraph 37 contain factual allegations requiring a response, LIV Golf denies the allegations in Paragraph 37.

38. Mr. Connor's May 25, 2026, email accordingly constituted a repudiatory breach of the Agreement as a whole. At no time has any LIV Golf Party disavowed Mr. Connor's May 25, 2026, email or asserted that he lacked authority to send it on behalf of the LIV Golf Parties; to the contrary, the LIV Golf Parties acted in conformity with it and did not engage Mobii for the Korea event or for any subsequent Event. Mobii accepted that repudiation as a total breach of the entire Agreement and, through its counsel, served a Notice of Termination of the Agreement, the single tripartite instrument, on May 25, 2026. (Notice of Termination attached and incorporated as Exhibit 12.) The Notice of Termination was directed to and served on both LIV Golf Parties and terminated the Agreement in its entirety, not merely in relation to any particular LIV Golf Party or any particular category of Events. In the alternative and, as stated in the Notice of Termination, Mobii was in any event entitled to and did terminate the Agreement under clause 19.1 following LIV Golf's failure to remedy its payment default after the May 8, 2026, notices served by Mobii. (*See* Exhibit 12.)

**ANSWER:** To the extent the allegations in Paragraph 38 assert legal conclusions, no response is required. To the extent the allegations in Paragraph 38 purport to characterize a May 25, 2026 Notice of Termination of the Agreement issued by Mobii to LIV Golf, LIV Golf respectfully refers the Court to that document for its true and complete contents and denies any allegations that have been inaccurately characterized. To the extent the allegations in Paragraph 38 contain factual allegations requiring a response, LIV Golf denies the allegations in Paragraph 38.

39.     Because LIV Golf repudiated the Agreement and terminated Mobii's ability to perform under the Agreement, Mobii will not receive the revenue it was contractually entitled to receive from the remaining six events in LIV Golf's schedule, all of which will take place during the Agreement's term.

**ANSWER:**  The allegations in Paragraph 39 state legal conclusions to which no response is required.  To the extent the allegations in Paragraph 39 contain factual allegations requiring a response, LIV Golf denies the allegations in Paragraph 39.

40.     Mobii has taken and continues to take all reasonable steps to mitigate the losses caused by LIV Golf's breach and repudiation of the Agreement. The nature of Mobii's dedicated infrastructure, personnel, and platform licenses committed to the Agreement, and the short interval between LIV Golf's repudiation and the remaining scheduled Events under the Agreement, materially constrained the mitigation opportunities available to Mobii.

**ANSWER:**  LIV Golf lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 and, on that basis, denies them.  To the extent the allegations in Paragraph 40 assert legal conclusions, no response is required.

41.     Based on historical performance and revenues from Mobii's work with LIV Golf since the Agreement was executed, Mobii expected to generate an average of $34,922 in revenue from each of the remaining six events. Because Mobii's infrastructure, personnel, platform licenses, and cloud services were purpose-built, dedicated, and deployed for the delivery of Services under the Agreement, the marginal cost that Mobii saved as a result of LIV Golf's repudiation was minimal, and Mobii's lost revenue substantially represents its lost profits and expectation loss. Due to LIV Golf's breach, Mobii suffered additional damages of $209,531.52 in lost profits and revenue for the remaining six events.

**ANSWER:**  LIV Golf lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 and, on that basis, denies them.  To the extent the allegations in Paragraph 41 assert legal conclusions, no response is required.

42.     Mobii satisfied all conditions precedent to filing suit and performed all its obligations under the Agreement.

**ANSWER:**  The allegations in Paragraph 42 state legal conclusions to which no response is required.

43.     On the other hand, LIV Golf has failed to pay undisputed invoices totaling $925,102.82, and its repudiatory breach of the contract caused Mobii to lose $209,531.52 in profits

16

and revenue. Due to its breach, LIV Golf owes Mobii $1,134,634.34 plus interest that has been and will continue to accrue on the unpaid invoices.

**ANSWER:** LIV Golf lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 regarding Mobii's alleged lost profits and revenue and, on that basis, denies them. To the extent the allegations in Paragraph 43 assert legal conclusions, no response is required.

## COUNT I
### Breach of Contract

44.     Mobii realleges and incorporates the allegations in paragraphs 1-43.

**ANSWER:** LIV Golf realleges and incorporates its responses to the allegations in Paragraphs 1–43.

45.     Mobii offered LIV Golf live sports broadcasting technology services, and LIV Golf accepted Mobii's offer. The parties' agreement is memorialized in the Agreement, which is a written and enforceable contract.

**ANSWER:** The allegations in Paragraph 45 state legal conclusions to which no response is required.

46.     Mobii performed its obligations under the Agreement and was ready, willing, and able to continue performing under the Agreement until the end of the Agreement's term on December 31, 2026.

**ANSWER:** The allegations in Paragraph 46 state legal conclusions to which no response is required.

47.     LIV Golf breached the Agreement by failing to pay Mobii's undisputed invoices and by repudiating its further obligations under the Agreement.

**ANSWER:** The allegations in Paragraph 47 state legal conclusions to which no response is required.

48.     Further and in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(2) and (3), and without prejudice to the allegation that LIV US is directly liable for each of the invoices and damages described above, LIV US is jointly and severally liable with LIV UK under clause 14.1 of the Agreement for all Services Fees payable to Mobii under the Agreement,

17

including in respect of any Events held outside the United States. LIV US's failure to pay those amounts constitutes a breach of clause 14.1, and, given the joint and several nature of that liability under the English law that governs the Agreement, Mobii is entitled to recover the full amount claimed from LIV US alone, without any requirement to join LIV UK to this action.

**ANSWER:**  The allegations in Paragraph 48 state legal conclusions to which no response is required.

49.     LIV Golf's breach has caused Mobii to incur damages in the principal amount of $1,134,634.34, which includes $925,102.82 in unpaid invoices and $209,531.52 in lost profits and revenue.

**ANSWER:**  LIV Golf lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 regarding Mobii's alleged lost profits and revenue and, on that basis, denies them.  To the extent the allegations in Paragraph 49 assert legal conclusions, no response is required.

50.     LIV Golf's breach also entitles Mobii to contractual pre-judgment interest on the unpaid invoices, accruing through the date judgment is entered in this case.

**ANSWER:**  The allegations in Paragraph 50 state legal conclusions to which no response is required.

WHEREFORE, Mobii respectfully requests this Court to grant judgment against LIV Golf and award Mobii damages, including the principal amount owed, interest, costs, and all other relief this Court deems just and proper.

**ANSWER:**  WHEREFORE, LIV Golf respectfully requests that this Court deny Mobii's requested relief in its entirety, enter judgment in favor of LIV Golf, dismiss the Complaint with prejudice, and grant such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Mobii demands a trial by jury.

**ANSWER:**  LIV Golf demands a trial by jury.

18

## SEPARATE AND ADDITIONAL DEFENSES

The statement of any defense herein does not assume the burden of proof for any issue as to which applicable law places the burden on Mobii.  Each of the defenses set forth herein is stated as a separate and distinct defense, concurrently with and/or in the alternative to, and without waiving, any other defenses which herein are or hereafter may be pleaded.  LIV Golf presently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, separate defenses available.  LIV Golf expressly reserves the right to amend this pleading to add, supplement, or modify its defenses based upon legal theories that may be divulged through discovery or through further analysis of Mobii's allegations, contentions, and positions in this litigation.

Subject to the foregoing reservations, LIV Golf asserts the following defenses, without assuming, as to any defense, any burden of proof that it would otherwise not bear:

### FIRST DEFENSE

Mobii has failed to state any cause of action on which relief can be granted.

### SECOND DEFENSE

Any claim for relief in favor of Mobii is barred by and/or fails on the basis of documentary evidence.

### THIRD DEFENSE

Mobii lacks standing to assert one or more of the causes of action contained in the Complaint.

### FOURTH DEFENSE

Any claim for relief in favor of Mobii is barred in whole or in part by Mobii's failure to satisfy one or more conditions precedent to any right of recovery.

19

**FIFTH DEFENSE**

Any claim for relief in favor of Mobii is barred in whole or in part by Mobii's breach of or failure to perform its contractual obligations.

**SIXTH DEFENSE**

Any claim for relief in favor of Mobii is barred in whole or in part by the balance of equities between Mobii and LIV Golf.

**SEVENTH DEFENSE**

Any claim for relief in favor of Mobii is barred in whole or in part by the doctrine of unclean hands.

**EIGHTH DEFENSE**

Any claim for relief in favor of Mobii is barred in whole or in part by the doctrine of laches.

**NINTH DEFENSE**

Any claim for relief in favor of Mobii is barred in whole or in part by the doctrine of equitable estoppel.

**TENTH DEFENSE**

Any claim for relief in favor of Mobii is barred in whole or in part by the doctrine of waiver.

**ELEVENTH DEFENSE**

Any claim for relief in favor of Mobii is barred in whole or in part because any such relief would be inconsistent with the parties' course of performance and/or course of conduct.

**TWELFTH DEFENSE**

Any claim for relief in favor of Mobii is barred in whole or in part because Mobii has failed to join one or more necessary and/or indispensable parties, including LIV Golf Ltd.

## THIRTEENTH DEFENSE

Any claim for relief in favor of Mobii is barred in whole or in part by Mobii's failure to mitigate its alleged damages.

## FOURTEENTH DEFENSE

Any claim for relief in favor of Mobii is barred in whole or in part because LIV Golf is not liable, jointly and severally or otherwise, for amounts attributable to Events held outside the United States, which under the Agreement are the responsibility of LIV Golf Ltd.

Dated: August 12, 2026

Respectfully submitted,

 /s/ Michael Holecek
Michael Holecek
Florida Bar No. 1035950
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
MHolecek@gibsondunn.com

Brian M. Lutz (*pro hac vice* forthcoming)
Colin B. Davis (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, California 94111
(415) 393-8200

*Counsel for Defendant LIV Golf Incorporated*

21