**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

MOBII SYSTEMS GROUP LIMITED,

Plaintiff,

v. Case No.: 1:26cv24861

LIV GOLF INCORPORATED,

Defendant.

_______________________________________/

# AMENDED COMPLAINT

Plaintiff, Mobii Systems Group Limited, sues Defendant LIV Golf Incorporated, and alleges the following:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Mobii Systems Group Limited ("Mobii"), is a foreign company incorporated in and has its principal place of business in Ontario, Canada. Mobii is a Canadian citizen for jurisdictional purposes.

2. Defendant, LIV Golf Incorporated ("LIV Golf" or "LIV US"), is incorporated in Delaware, with its principal place of business located at 600 Brickell Avenue, Suite 1755, Miami, FL 33131. LIV Golf Incorporated is a Delaware and Florida citizen for jurisdictional purposes.

3. Because Mobii seeks over $1,000,000 in damages, this action exceeds the $75,000 jurisdictional threshold.

4. This Court has diversity subject matter jurisdiction because the parties' citizenship is completely diverse and the amount in controversy exceeds the jurisdictional threshold.

5. Venue is proper in this Court because the conduct giving rise to this breach of contract action occurred within the Southern District of Florida and Defendant's principal place of business is in this district.

a. Defendant LIV Golf Incorporated is a Delaware corporation with its principal place of business at 600 Brickell Avenue, Suite 1755, Miami, Florida 33131, within this District, as stated in LIV Golf Incorporated's own 2026 Foreign Profit Corporation Annual Report filed with the Florida Secretary of State on May 1, 2026, which lists each of its directors at that address. LIV Golf Incorporated is the counterparty to the Agreement in respect of the obligations, invoices, and Events at issue in this action.

b. Each of the invoices that forms the basis of this action was issued to, and is payable by, LIV Golf Incorporated, as the invoices themselves reflect.

c. LIV Golf Incorporated maintains an operational office at 222 Lakeview Avenue, Suite 1400, West Palm Beach, Florida, within this District, which LIV Golf Incorporated has identified as its address in its own public filings, including filings made with United States federal authorities.

d. The Agreement expressly provides that the courts of England are a "non-exclusive jurisdiction," and the parties therefore agreed that proceedings arising out of the Agreement could be brought in courts other than the English courts.

e. No party to this action is an English company: Mobii is a company incorporated in Canada with its principal place of business in Ontario, and LIV Golf Incorporated is a Delaware corporation. England is not the home forum of either party to this action.

(*See* LIV Golf Incorporated's Annual Report attached and incorporated as Exhibit 1.)

## <u>GENERAL ALLEGATIONS</u>

6. LIV Golf is a professional golf league that holds golf competitions around the world each year. LIV Golf was founded in 2022 to be a competitive rival to the PGA Tour. Its primary funding came from Saudi Arabia's Public Investment

Fund. That funding allowed LIV Golf to attract premier talent using significant signing bonuses and competition prizes.

7. LIV Golf originally broadcast its events online. In 2023, it agreed to broadcast its events on the CW Network. Then, in 2025, LIV Golf agreed to broadcast its events on Fox Sports, where it continues to broadcast its events today.

8. Mobii provides comprehensive technology services to enhance live sports broadcasts. The company was founded in 2008 and has served numerous sports broadcast partners all over the globe.

9. On January 24, 2025, Mobii and LIV Golf entered into the Supply of Goods and Services Agreement (the "Agreement"). (*See* Agreement attached and incorporated as Exhibit 2.)

10. The Agreement has a two-year term, beginning on January 1, 2025, and ending on December 31, 2026. (*Id*. at 1.)

11. The Agreement requires Mobii to provide LIV Golf integrated broadcast technology, streaming services, platform licenses, and related support services at all LIV Golf events in 2025 and 2026. (*See id*. at 16-33.)

12. In return, LIV Golf was required to pay services fees, which include an annual service fee and usage fees per event for Mobii's event-based services. (*See id*. § 14.1.)

13. Notably, section 14.7 in the Agreement states in pertinent part:

> Payment of invoices in relation to which there is no bona fide dispute shall be made in full by the due date set out in the Services Payment Schedule as appropriate, subject to the LIV Golf Parties having received a valid invoice not less than thirty (30) days prior to the applicable payment date and where an invoice is not received by such date the time for payment shall be extended to thirty days after the receipt of the invoice.

(*See id*. § 14.7.)

14. If payment is not made on a valid invoice, the Agreement provides Mobii the right to collect interest, at the rate of two percent (2%) per annum above the Bank of England's base rate from time to time, until payment is made. (*Id*. at § 14.9.)

15. The Agreement is governed by English law. And while the parties submitted to English courts for resolving disputes, the Agreement explicitly acknowledges that English courts are a "non-exclusive jurisdiction." (*Id*. § 28.19.)

16. The Agreement is a single written instrument executed by three parties: LIV Golf Incorporated (referred to in the Agreement as "LIV US"), LIV Golf Ltd, an English company ("LIV UK"), and Mobii. Each of LIV US, LIV UK, and Mobii is named on the face of the Agreement and defined as a "Party" (collectively, the "Parties"), and LIV US and LIV UK together are defined as the "LIV Golf Parties." The Agreement is executed once by each Party, is referred to throughout in the singular ("this Agreement"), and creates a single, integrated set of obligations among all three Parties.

17. Clause 4.7 of the Agreement identifies the commercial purpose for which each LIV Golf Party entered into the Agreement: LIV US in respect of Services to be provided in connection with Events in the United States, and LIV UK in respect of Services to be provided in connection with Events outside the United States. Clause 4.7 allocates the commercial purpose of the Services between the LIV Golf Parties; it does not fragment the Agreement into separate bilateral contracts. Numerous operative provisions of the Agreement, including the exclusive licenses granted under clause 4.8 and the payment obligation established by clause 14.1, are expressed to operate for the benefit of, or to be owed by, the LIV Golf Parties collectively.

18. Clause 14.1 of the Agreement provides: "In consideration of the provision of the Services, the LIV Golf Parties shall pay to the Supplier the Services Fees in accordance with the Services Payment Schedule." The obligation is stated in the plural ("the LIV Golf Parties shall pay") and is not apportioned as between LIV US and LIV UK on the face of clause 14.1. Under the English law that governs the Agreement, a payment obligation expressed to be owed by two named parties collectively, without allocation between them, in a commercial contract between sophisticated parties, gives rise to a joint and several liability on each of those parties for the whole amount payable. That construction accords with the commercial purpose of clause 14.1, which is to secure payment of the Services Fees to Mobii by

the LIV Golf group, and which would be defeated by a construction requiring Mobii to pursue a foreign affiliate in order to recover sums unpaid under the Agreement.

19. The Agreement contains no provision excluding, limiting, or apportioning the joint and several liability of LIV US and LIV UK under clause 14.1. Where the Parties intended to exclude or limit rights or liabilities under the Agreement, they did so expressly: clause 28.14, for example, expressly excludes the operation of the Contracts (Rights of Third Parties) Act 1999. No comparable carve-out qualifies the payment obligation in clause 14.1.

20. The invoicing arrangements in clauses 14.3 and 14.4 do not alter or diminish LIV US's joint and several liability under clause 14.1. Clause 14.3 confers on the LIV Golf Parties "absolute discretion" as to how invoices are addressed as between LIV US, LIV UK, and their affiliates, a matter of administrative allocation directed at how Mobii is to issue invoices rather than at who is substantively liable to pay them. Clause 14.4 likewise directs Mobii, as Supplier, to apportion the Services Fees for invoicing purposes between LIV US (for US Events) and LIV UK (for non-US Events), to issue separate invoices to each, and to obtain the LIV Golf Parties' agreement to the proposed apportionment. Clause 14.4's statement that "the Services Fees shall only be payable once" is a safeguard against double recovery, a concern that itself presupposes that each of the LIV Golf Parties could be liable to Mobii for the whole, and its requirement for separate invoices governs the mechanics

of billing. Neither provision releases LIV US from, or otherwise qualifies, the substantive payment obligation established by clause 14.1.

21. Accordingly, LIV US is jointly and severally liable to Mobii under clause 14.1 of the Agreement for all Services Fees payable to Mobii under the Agreement, including in respect of Events held outside the United States, and Mobii is entitled to recover the full amount of any unpaid Services Fees, and consequential damages arising from any breach of clause 14.1, from LIV US alone.

22. The construction of clause 14.1 set out above is confirmed by the manner in which the LIV Golf Parties in fact operated the payment obligation under the Agreement. First, LIV Golf Incorporated instructed Mobii on multiple occasions to submit all invoices issued under the Agreement, whether addressed to LIV US or to LIV UK, to a single common email address, accounts@livgolf.com, operated by the LIV Golf group. Mobii complied with those instructions, and each of the invoices identified in this Complaint was submitted to that address in accordance with LIV Golf Incorporated's direction. The LIV Golf Parties did not maintain and did not instruct Mobii to use separate invoice submission channels for LIV US and LIV UK. Second, the individuals within the LIV Golf organization who instructed, approved, discussed, or otherwise handled payment of Mobii's invoices under the Agreement were the same personnel irrespective of whether the invoice in question was addressed to LIV US or to LIV UK. A single set of personnel discharged those

functions for the LIV Golf group as a whole. Third, the addressing of Mobii's invoices under the Agreement was at all times directed by LIV Golf, including a written instruction from accounts@livgolf.com to address invoices for services relating to non-US Events to LIV Golf's affiliate, LIV Golf Events Ltd., with which Mobii complied. Each invoice that forms the basis of this action was issued to LIV Golf Incorporated, as were Mobii's 2025 invoices for the annual license fees for the same platform licenses, which were paid in full without any question of apportionment under clause 14.4 being raised. No invoice under the Agreement was ever addressed to LIV Golf Ltd. That course of dealing is inconsistent with the geographic segregation of substantive payment liability that clause 4.7, read in isolation, might otherwise be said to suggest, and confirms the unified operation and joint and several nature of the payment obligation established by clause 14.1.

23. In 2025, LIV Golf paid Mobii's invoices for the first year under the Agreement. The 2025 invoices for the annual license fees for the same platform licenses that are the subject of Invoice 0091 were issued to LIV Golf Incorporated, were submitted through the same channel, and were paid in full without any question of apportionment being raised. In early 2026, however, LIV Golf began falling behind on timely paying Mobii's invoices. Notably, LIV Golf has not disputed any one of Mobii's invoices to date.

24. At no time prior to the filing of this Complaint has LIV Golf asserted any bona fide dispute, counterclaim, right of set-off, service-level failure, warranty concern, or any other basis under the Agreement or otherwise for withholding, reducing, or delaying payment of any of the invoices identified in this Complaint. To the contrary, personnel of LIV Golf on multiple occasions acknowledged the outstanding invoices and informed Mobii, including in written communications to Mobii's Chief Executive Officer and other Mobii personnel, that the invoices had been approved and were in process for payment. Notwithstanding these repeated acknowledgments and approvals, LIV Golf failed to remit payment.

25. On February 28, 2026, Mobii issued to LIV Golf an invoice for the 2026 Annual License Fee in the amount of $820,600.00. (Mobii Invoice 0091 attached and incorporated as Exhibit 3.) The Annual License Fee was invoiced in respect of platform licenses and integrated technology that were live, operational, and deployed at LIV Golf events from the beginning of the 2026 season, and that continued to be so deployed through the date of LIV Golf's repudiation of the Agreement. The Annual License Fee was fully invoiced on February 28, 2026, and became due and payable on March 9, 2026, well prior to any repudiation of the Agreement by LIV Golf, and LIV Golf's obligation to pay the Annual License Fee accrued in full on that date.

26. On March 1, 2026, Mobii served LIV Golf an invoice for event-based services for $7,419.03. (Mobii Invoice 0100 attached and incorporated as Exhibit 4.)

27. On April 30, 2026, Mobii served LIV Golf an invoice for event-based services for $7,412.34. (Mobii Invoice 0105 attached and incorporated as Exhibit 5.)

28. On May 5, 2026, Mobii served LIV Golf an invoice for event-based services for $51,071.43. (Mobii Invoice 0107 attached and incorporated as Exhibit 6.)

29. On May 11, 2026, Mobii served LIV Golf an invoice for event-based services for $25,049.81. (Mobii Invoice 0111 attached and incorporated as Exhibit 7.)

30. On June 11, 2026, Mobii served LIV Golf an invoice for event-based services for $6,671.00. (Mobii Invoice 0120 attached and incorporated as Exhibit 8.)

31. Also on June 11, 2026, Mobii served LIV Golf an invoice for event-based travel to LIV Golf's Virginia competition for $6,879.21. (Mobii Invoice 0121 attached and incorporated as Exhibit 9.)

32. LIV Golf has failed to pay each invoice attached as Exhibits 3 through 9. As a result, each invoice is past due, and Mobii is owed interest on those amounts

pursuant to section 14.9 of the Agreement.

33. Despite LIV Golf's failure to pay these invoices, Mobii continued to perform under the Agreement. Indeed, Mobii continued to grant LIV Golf licenses to use its services and provided event-based services for seven (7) of LIV Golf's events in 2026.

34. Mobii has taken significant efforts to collect the amounts due pursuant to these invoices to avoid litigation.

35. Specifically, on May 8, 2026, Mobii's Canadian-based counsel served LIV Golf a Notice of Demand for Payment and Notice of Event of Default, demanding payment for the overdue invoices as of that date. The notices gave LIV Golf until May 15, 2026, to pay the overdue invoices. (Notice of Demand for Payment and Notice of Event of Default dated May 8, 2026, attached and incorporated as Composite Exhibit 10.)

36. On May 25, 2026, Nick Connor, LIV Golf's Senior Vice President of Technology, sent Mobii a repudiatory breach notice by email. Throughout the term of the Agreement, Mobii's communications with the LIV Golf organization concerning the Services and Mobii's invoices were conducted through a succession of senior LIV Golf personnel, each of whom communicated with Mobii on behalf of the LIV Golf organization as a whole, without distinguishing between the LIV Golf Parties and without confining their communications to US Events or non-US Events:

Matt Saunders, Senior Vice President, Direct-to-Consumer, until his departure from LIV Golf in the first quarter of 2026; Denise Taylor, Chief Product and Technology Officer, until her departure from LIV Golf in April 2026; and thereafter Andrew Lim of LIV Golf's product team, who among other things informed Mobii that its outstanding invoices had been approved and were in process for payment. Mr. Connor was copied on communications between Mobii and Ms. Taylor and Mr. Lim and on Mobii's communications to LIV Golf's accounts payable function, and from late April 2026 Mr. Connor was Mobii's senior point of contact within the LIV Golf organization in relation to the Agreement. The succession of LIV Golf personnel handling Mobii's account did not alter the unified manner in which the LIV Golf organization communicated with Mobii, which at no time distinguished between the LIV Golf Parties in respect of the Services or Mobii's invoices.

37. In his May 25, 2026, email, Mr. Connor stated: "[W]e are writing to notify you that we will not be moving forward with Mobii in Korea or at subsequent events." Mr. Connor's use of the collective "we," his reference to "Korea or at subsequent events" without geographic qualification as between US and non-US Events, and his stated intention that Mobii would not be engaged for any further Events under the Agreement, manifested a clear and unequivocal intention on behalf of the LIV Golf Parties collectively no longer to perform the Agreement. Mr. Connor did not, in his May 25, 2026, email or otherwise, confine his repudiation to

the obligations of LIV UK, and did not distinguish between the LIV Golf Parties. Mr. Connor also stated in the same email: "Please know that this decision is not reflective of the quality of work or services provided, and we are truly grateful for your partnership over the last several years." (Email from Mr. Connor dated May 25, 2026, attached and incorporated as Exhibit 11.)

38. Mr. Connor's May 25, 2026, email accordingly constituted a repudiatory breach of the Agreement as a whole. At no time has any LIV Golf Party disavowed Mr. Connor's May 25, 2026, email or asserted that he lacked authority to send it on behalf of the LIV Golf Parties; to the contrary, the LIV Golf Parties acted in conformity with it and did not engage Mobii for the Korea event or for any subsequent Event. Mobii accepted that repudiation as a total breach of the entire Agreement and, through its counsel, served a Notice of Termination of the Agreement, the single tripartite instrument, on May 25, 2026. (Notice of Termination attached and incorporated as Exhibit 12.) The Notice of Termination was directed to and served on both LIV Golf Parties and terminated the Agreement in its entirety, not merely in relation to any particular LIV Golf Party or any particular category of Events. In the alternative and, as stated in the Notice of Termination, Mobii was in any event entitled to and did terminate the Agreement under clause 19.1 following LIV Golf's failure to remedy its payment default after the May 8, 2026, notices served by Mobii. (*See* Exhibit 12.)

39. Because LIV Golf repudiated the Agreement and terminated Mobii's ability to perform under the Agreement, Mobii will not receive the revenue it was contractually entitled to receive from the remaining six events in LIV Golf's schedule, all of which will take place during the Agreement's term.

40. Mobii has taken and continues to take all reasonable steps to mitigate the losses caused by LIV Golf's breach and repudiation of the Agreement. The nature of Mobii's dedicated infrastructure, personnel, and platform licenses committed to the Agreement, and the short interval between LIV Golf's repudiation and the remaining scheduled Events under the Agreement, materially constrained the mitigation opportunities available to Mobii.

41. Based on historical performance and revenues from Mobii's work with LIV Golf since the Agreement was executed, Mobii expected to generate an average of $34,922 in revenue from each of the remaining six events. Because Mobii's infrastructure, personnel, platform licenses, and cloud services were purpose-built, dedicated, and deployed for the delivery of Services under the Agreement, the marginal cost that Mobii saved as a result of LIV Golf's repudiation was minimal, and Mobii's lost revenue substantially represents its lost profits and expectation loss. Due to LIV Golf's breach, Mobii suffered additional damages of $209,531.52 in lost profits and revenue for the remaining six events.

42. Mobii satisfied all conditions precedent to filing suit and performed all its obligations under the Agreement.

43. On the other hand, LIV Golf has failed to pay undisputed invoices totaling $925,102.82, and its repudiatory breach of the contract caused Mobii to lose $209,531.52 in profits and revenue. Due to its breach, LIV Golf owes Mobii $1,134,634.34 plus interest that has been and will continue to accrue on the unpaid invoices.

**COUNT I**
**Breach of Contract**

44. Mobii realleges and incorporates the allegations in paragraphs 1-43.

45. Mobii offered LIV Golf live sports broadcasting technology services, and LIV Golf accepted Mobii's offer. The parties' agreement is memorialized in the Agreement, which is a written and enforceable contract.

46. Mobii performed its obligations under the Agreement and was ready, willing, and able to continue performing under the Agreement until the end of the Agreement's term on December 31, 2026.

47. LIV Golf breached the Agreement by failing to pay Mobii's undisputed invoices and by repudiating its further obligations under the Agreement.

48. Further and in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(2) and (3), and without prejudice to the allegation that LIV US is directly liable for each of the invoices and damages described above, LIV US is

jointly and severally liable with LIV UK under clause 14.1 of the Agreement for all Services Fees payable to Mobii under the Agreement, including in respect of any Events held outside the United States. LIV US's failure to pay those amounts constitutes a breach of clause 14.1, and, given the joint and several nature of that liability under the English law that governs the Agreement, Mobii is entitled to recover the full amount claimed from LIV US alone, without any requirement to join LIV UK to this action.

49. LIV Golf's breach has caused Mobii to incur damages in the principal amount of $1,134,634.34, which includes $925,102.82 in unpaid invoices and $209,531.52 in lost profits and revenue.

50. LIV Golf's breach also entitles Mobii to contractual pre-judgment interest on the unpaid invoices, accruing through the date judgment is entered in this case.

WHEREFORE, Mobii respectfully requests this Court to grant judgment against LIV Golf and award Mobii damages, including the principal amount owed, interest, costs, and all other relief this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Mobii demands a trial by jury.

*<u>/s/ Jeremy C. Branning</u>*
**JEREMY C. BRANNING**
Florida bar No.: 507016
**JAKE BARNES**
Florida bar No.: 1032604
JONES WALKER
13 Palafox Place, Suite 200
Pensacola, FL 32502
P/E: jbranning@joneswalker.com
P/E: jacobbarnes@joneswalker.com
S/E: pimperial@joneswalker.com
S/E: jdallman@joneswalker.com

**-and-**

**LUIS LLAMAS**
Florida bar No.: 89822
JONES WALKER
201 Biscayne Boulevard, Suite 3000
Miami, FL 33131
P/E: llamas@joneswalker.com

***Attorneys for Plaintiff, Mobii Systems Group Limited***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court and furnished electronically to all counsel of record via the CM/ECF E-Filing system on this 31st day of August, 2026.

*<u>/s/ Jeremy C. Branning</u>*
**JEREMY C. BRANNING**